IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NUMBER 17-238 |
| : | |
| PEDRO RAMON PAYANO : | |

### DEFENDANT'S SENTENCING MEMORANDUM

Pedro Ramon Payano files this memorandum in aid of mitigation at sentencing. The Presentence Investigation Report prepared by Senior United States Probation Officer Megan A. Maier concludes the advisory range is 24-30 months based on a total offense of level 15, and a Criminal History Category III. Mr. Payano has one prior conviction, which occurred approximately 20 years ago, when the defendant was 18 years old. That conviction resulted in his deportation to the Dominican Republic on January 11, 2001. As indicated in Paragraph 9 of the Presentence Investigation Report, "on December 22, 2000, upon completion of his sentence in New York, a Form I-294 was issued, notifying Payano that he must request and obtain permission from the Attorney General to reapply for admission to the United States during the 10 years specified." It is uncontested that Mr. Payano remained in the Dominican Republic until 2012, living and consistently working for 12 years after his prior deportation. For many years, Mr. Payano maintained employment as a topographical surveyor in the Dominican Republic, a skilled profession to which he intends to return when he is deported. When arrested, he cooperated with authorities and accepted responsibility for his conduct.

The defendant was arrested on April 3, 2017. He has remained in continuous custody since that date. Upon completion of his federal sentence, he faces the possibility of further sanctions by the State of New York for a violation of parole. Following the disposition of that matter, Mr. Payano will be transferred to ICE custody, where he will await deportation proceedings.

The government urges the Court to vary upward from the recommended sentencing guideline range, to a sentence that is essentially double what is recommended by the guidelines. The request is illustrative of a consistent pattern by the government of asking this Court to exercise its discretion to Mr. Payano's detriment and is yet another attempt to make an "end run" around Mr. Payano's 4th Amendment rights. In support of its variance request, government has proffered in its Exhibit B, Mr. Payano's illegally obtained statement, as reliable evidence. In fact, both the voluntariness and reliability of the proffered statement are disputed. As this Court has recognized "the misunderstanding is easily explained in light of the language barrier between Payano and Trooper Fleisher. In fact, Trooper Fleisher admitted that it was difficult to understand Payano due to his strong Spanish accent." (Opinion, Document 37, p 15).  Further, and in addition to being reliable, the evidence must not "bear on such impermissible factors such as race…[or] national origin." _United States v. Torres,_ 926 F2d 321 at 324 (" Implicit in the broad discretion granted the sentencing judge, however, is the necessity that the information be reliable and not bear on such impermissible factors such as race, religion, national origin, or be the result of coerced statements, uncounseled convictions and the like." _Id._) The government's proffered evidence must be excluded because it bears on "impermissible factors."

Finally, even if this Court determines, pursuant to the sentencing guidelines, that it is permitted to consider the illegally obtained evidence; nevertheless, an upward variance from the

2

recommended guidelines is not warranted here. <u>United States v. Nichols, 763 F. Supp</u>. 277, 278 (E.D.Tenn 1991). As it was in <u>Nichols</u>, the government's request should be denied.

As previously noted, Mr. Payano has one prior conviction that occurred when he was 18 years old, nearly 20 years ago. Following his deportation, he remained out of the United States for 12 years.  Despite the age of his prior conviction, his base offense level of 8 is enhanced by 10 levels, pursuant to 2L1.2(b)(2)(A). Mr. Payano's own honesty and candor regarding the date of his return to this country was to his detriment. He admitted to returning in 2012, thus committing the instant offense within the 15 year window in which his prior sentence is counted. (See  4A1.1 (a), Application Note 1.) Hence, his candor earned him 3 criminal history points. Despite years and years of compliance and law abiding behavior, when he returned to the United States he was technically still on parole for that prior offense, thus subjecting him and additional two criminal history points. Therefore he is in Criminal History Category III based on only his 20 year old prior case. The argument could be made for downward departure and/or variance due to overrepresentation of criminal history. Finally, upon completion of his federal sentence, he faces the possibility of further sanctions by the State of New York for a violation of parole and then Mr. Payano will be transferred to ICE custody, where he will await deportation proceedings.

Given a consideration of all of the factors in this case, the defense respectfully suggests that a sentence within the recommended guideline range would best fulfill sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).

### I.    PROCEDURAL HISTORY

On May 3, 2017, a grand jury in  the Eastern District of Pennsylvania filed an indictment charging Mr. Payano with one count of Illegal Reentry in violation of 8 U.S.C. § 1326(a) and

(b)(2), and other charges.  Mr. Payano entered a guilty plea to the instant charge on October 4, 2017.  Sentencing is scheduled for January 19, 2018.

## II. **APPLICATION OF THE STATUTORY FACTORS TO THIS CASE**

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(1). In this case, a sentence within the recommended guideline range is adequate to address the history and characteristics of Mr. Payano.

Mr. Payano's personal history is accurately summarized in the pre-sentence report. He was born and raised by both of his parents in Santo Domingo until he was 12 years old. At that time, in 1991, the defendant, his parents and siblings immigrated legally to the United States and settled in the Bronx, New York. The defendant's parents and brother still reside in the Bronx and the defendant resided there until he was deported in 2001. After his deportation, he remained in the Dominican Republic for almost 12 years. During that time he maintained stable employment in the hospitality industry and then spent 7 years as a topographical surveyor. He was involved in a long term relationship with Leonor Sanchez, which produced a daughter, Emily, who is now 10 years old. The defendant maintains an extremely close relationship with his daughter, and though he and Ms. Sanchez are no longer romantically involved, they remain amicable and ably co-parent their child. Ms. Sanchez is aware of the defendant's current legal situation, and knows that he will be deported. She and their daughter will provide support and stability for Mr. Payano once he returns to the Dominican Republic. He is looking forward to returning to Santo Domingo. He has demonstrated that he can maintain a life in his country, and has no reason or intention to return to the United States.

4

Mr. Payano returned to the United States in 2012 to be closer to his aging parents, and to seek higher paying employment. While in the United States, he worked in construction, generally for cash wages. Even now, as he remains in custody, he is faced with the added stress of hearing how his incarceration is affecting his parents as well as his daughter.  As a result of this, he is firmly resolute to never return to this country.  He realizes that he cannot return to this country without risking re-arrest and additional criminal penalties.  This experience has impacted him deeply and has served the deterrent effect that his prior contact, which occurred nearly 20 years ago, when he was barely more than a child, did not. Additionally, he knows that the current political climate supports the implementation of harsher penalties for aliens with histories of prior convictions and deportations, such as him.  This further reinforces the need for him to refrain from reentering the United States.

**III.     SENTENCING GUIDELINES**

The range of sentences statutorily available to the Court, including the advisory guidelines range, have been previously discussed in this memo and are listed in Part D of the Presentence Report.  Further, the court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

## IV.  CONCLUSION

Based on the above reasons, the defense respectfully requests the Court impose a sentence within the recommended guideline range.

Respectfully submitted,

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

**CERTIFICATE OF SERVICE**

     I, Elizabeth L. Toplin, Assistant Chief, Trial Unit, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically served a copy of Defendant's Sentencing Memorandum *via* Electronic Case Filing, upon Jennifer Jordan, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

                                         */s/ Elizabeth L. Toplin*
                                         ELIZABETH L. TOPLIN
                                         Assistant Chief, Trial Unit

Date:   January 16, 2018